**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COREY ADAM RAIA,

Petitioner,

v. Case No. 8:20-cv-93-CEH-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

Respondent.
_______________________________/

**ORDER**

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response (Doc. 11), to which Petitioner replied (Doc. 15). The Court directed Respondent to file a supplemental response addressing Grounds Two, Three, Five, and Six of the petition as ineffective assistance of appellate counsel claims (Doc. 22). Respondent filed a supplemental response (Doc. 23), to which Petitioner replied (Doc. 27). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

A six-count amended information charged petitioner with three counts of sexual battery on a child less than twelve years of age (Counts 1, 5 and 6), two counts of lewd and lascivious molestation on a child less than twelve years of age (Counts 2 and 3), and one count of attempted lewd and lascivious molestation on a child less than twelve years of age (Count 4) (Doc. 12-1, Ex. 16). A jury found Petitioner guilty on each count. (*Id.*,

Ex. 23). Petitioner was sentenced to life in prison on each count, except Count 4, for which he was sentenced to 15 years in prison (*Id.*, Ex. 25). The convictions and sentences were affirmed on appeal (*Id.*, Ex. 36).

Petitioner filed a motion to correct his sentence under Florida Rule of Civil Procedure 3.800(a), raising a double jeopardy violation (*Id.*, Ex. 32). The state court denied the motion under state law (*Id.*, Ex. 33).

Petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure Rule 3.850 (Doc. 12-2, Ex. 38), and then an amended Rule 3.850 motion, alleging claims of ineffective assistance of trial counsel (Doc. 12-3, Ex. 40). The trial court denied some claims and directed the State to respond to the remaining claims (Docs. 12-4 & 12-5, Ex. 41). After the State responded (Doc. 12-6, Ex. 42), the state court ordered an evidentiary hearing on the remaining claims (Doc. 12-7, Ex. 43). Following the evidentiary hearing, the state court issued its final order denying the remaining claims in the amended Rule 3.850 motion (*Id.*, Ex. 45). It issued an amended final order to reflect Petitioner's correct address (*Id.*, Ex. 46). Petitioner appealed, and the state appellate court affirmed without a written opinion (*Id.*, Ex. 52).

Petitioner filed a petition alleging ineffective assistance of appellate counsel (Doc. 12-8, Ex. 57), which the state appellate court denied without elaboration (Doc. 12-9, Ex. 60).

Petitioner filed his federal habeas petition (Doc. 1), which asserts six grounds for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

**C. Exhaustion and Procedural Default**

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. §

2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

## III. ANALYSIS

**Ground One: Trial counsel failed to impeach State's key witness (Dawn Swanson) pursuant to Evidence Code 90.610, and to effectively cross-examine.**

Petitioner contends trial counsel was ineffective in failing to impeach State's witness Dawn Swanson with prior convictions. He alleges counsel knew Swanson had "a Battery charge from 1990, Fraud impersonating an Officer STATUTE 843.08 in 2001, 2004 traffic offense and DUI of Alcohol and violation of probation in 2004 and 2005." (Doc. 1 at 5). And he argues counsel's failure to impeach Swanson "allowed his Jury to apply an incorrect standard for truthfulness to D. Swanson's testimony." (*Id*. at 6).

In state court, this claim was raised, in part, in Issue #3 of Petitioner's amended Rule 3.850 motion (Doc. 12-3, Ex. 40 at 32-34).[1] There, Petitioner asserted that counsel was ineffective for failing to impeach Swanson with her 2001 fraud conviction (*Id.*). He identified no other conviction counsel should have used to impeach Swanson (*Id.*). In denying the claim, the state post-conviction court stated:

> Counsel's failure to impeach a key State witness with evidence of an admissible prior conviction can constitute deficient performance, particularly where the trial turned solely on the credibility of the witnesses. *See Kelley v. State*, 198 So. 3d 1077, 1078 (Fla. 5th DCA 2016). A withholding of adjudication is not, however, a disposition that qualifies for use as impeachment. "Unless there is a final judgment of conviction or an adjudication of guilt, [a] defendant or witness may not be impeached with evidence of a guilty plea or jury verdict pursuant to section 90.610(1)." *State v. McFadden*, 772 So. 2d 1209, 1216 (Fla. 2000) (finding it was error for trial court to permit State to cross-examine defendant with prior offense for battery of same victim, when offense resulted in withholding of adjudication.)
>
> Because the Pinellas County Clerk of Court's record regarding Dawn Swanson's 2001 charge for false impersonation indicates the court's disposition was a withholding of adjudication, and Defendant presented no evidence to show that this changed prior to trial to an adjudication of guilt, Counsel was not deficient for failing to cross-examine Swanson with this offense. The disposition of a withholding of adjudication precluded Counsel from using this offense as impeachment evidence. *See Frasilus v. State*, 840 So. 2d 1117, 1118 n. 4 (Fla. 5th DCA 2003); *cf. Brown v. State*, 787 So. 2d 136, 138 (Fla. 4th DCA 2001) ("It is error ... to allow a witness to be impeached pursuant to section 90.610(1) when he was not adjudicated guilty of the prior offense."). Moreover, even if Counsel could have impeached Swanson with this information, this alone would not have created a reasonable probability that the outcome of the trial would have been different, in light of the evidence presented by E.L.K.
>
> Accordingly, this claim shall be denied.

[1] When citing pleadings and exhibits, the Court will use the page numbers assigned by this Court's electronic docketing system.

(Doc. 12-7, Ex. 46 at 126).

In his Initial Brief on appeal, Petitioner expanded his claim to include counsel's failure to impeach Swanson not only with the fraud conviction but also with other convictions (*Id.*, Ex. 49 at 178-81). The appellate court affirmed without a written opinion (*Id.*, Ex. 52).

A. Procedural Default

Respondent raises procedural default (Doc. 11 at 22-23). The Court agrees that Ground One is unexhausted, other than to the extent Petitioner contends counsel was ineffective in failing to impeach Swanson with her prior conviction for fraud. Although Petitioner expanded his claim to include the other convictions in his Initial Brief, that was inadequate to exhaust the entire claim. To exhaust a claim, a petitioner "must 'fairly present' his claim in *each* appropriate state court. . . ." *Baldwin*, 541 U.S. at 29 (emphasis added).[2] Because Petitioner failed to present the entire claim to the state post-conviction court, the claim is exhausted only to the extent Petitioner contends counsel was ineffective in failing to impeach Swanson with her fraud conviction.

Petitioner's claim regarding counsel's failure to impeach Swanson with other convictions is now barred by the two-year limit of Rule 3.850, *see Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of Rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. *See Foster v. State*, 614 So. 2d 455, 458 (Fla.1992). And Petitioner does not allege and demonstrate actual

[2] Notably, a state appellate court in Florida will not review a claim raised for the first time on post-conviction appeal. *Jackson v. State*, 93 So. 3d 395, 396 (Fla. 2d DCA 2012).

prejudice to excuse his default; nor does he allege and meet the fundamental miscarriage of justice exception. Accordingly, Petitioner's claim is procedurally barred from review, except for the claim that counsel was ineffective in failing to impeach Swanson with her fraud conviction.

B. Merits

"[A] state court's interpretation of state law. . .binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (explaining that "[s]tate courts are the ultimate expositors of state law," and federal courts must abide by their rulings on matters of state law) (citations and footnote omitted). "Although an ineffective assistance of counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . .we must defer to the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278 F. App'x 902, 908 (11th Cir. 2008) (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). *See also Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the petitioner's counsel] done what [the petitioner] argues he should have done. . . .It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

The basis for Petitioner's ground of ineffective assistance of counsel is counsel's failure to impeach Swanson with a prior conviction under Florida law (§ 90.610). Both the state post-conviction court in rejecting Petitioner's claim of ineffective assistance of counsel, and the state appellate court by affirming that rejection, have answered the question of what would have happened if counsel had attempted to impeach Swanson with her fraud conviction—under Florida law, counsel would not have been allowed to use the conviction to impeach Swanson because she was not adjudicated guilty of that offense. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [the petitioner's counsel] objected to the introduction of [the petitioner's] statements based on [state law] — the objection would have been overruled. . . .Therefore, [the petitioner's counsel] was not ineffective for failing to make that objection."). The state courts' interpretation of state law is afforded deference. Therefore, Petitioner establishes neither deficient performance nor resulting prejudice from counsel's alleged error. *Strickland*, 466 U.S. at 691–92.

Even if, as Petitioner argues, counsel was deficient in failing to impeach Swanson with two other felony convictions, Petitioner has failed to demonstrate prejudice. The state post-conviction court concluded had counsel impeached Swanson with prior convictions, this would not have created a reasonable probability that the outcome of the trial would have been different, considering victim El.K.'s testimony that Petitioner put his mouth on her vagina and touched her vagina, and she saw Petitioner touch the other child victims (Doc. 12-11, Ex. 82 at 294-312). Swanson's testimony added little

inculpatory evidence other than to support El.K.'s testimony describing how Petitioner touched her and the other victims (*Id*., at 248-91). Thus, Petitioner establishes no prejudice. *Cf. Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1324 n. 7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative."). Ground One warrants no relief.

**Ground Two: Granting of the State's Motion to Admit "Similar Facts" pursuant to 90.404(2)(6) (sic).**

The Court construes Ground Two as alleging that Petitioner's appellate counsel was ineffective in failing to raise on direct appeal the argument that the trial court erred in granting the State's motion to admit similar facts evidence[3] (Doc. 1 at 7-8). He appears to assert that the state trial court erred by admitting B.H.'s testimony as similar facts evidence without also admitting evidence that her sister, V.H., had recanted her accusations, and the criminal charges against Petitioner based on B.H. and V.H.'s accusations had been dismissed (*Id*. at 8). He also appears to argue that the order allowing B.H.'s testimony is not supported by clear and convincing evidence (Doc. 27 at 2).

The State filed a pre-trial notice of intent to introduce evidence of other crimes or acts that Petitioner committed in 2009 against another child, B.H. (Petitioner had oral union with B.H.'s vagina), as similar facts evidence under Fla. Stat., § 90.404(2)(b) (Doc.

[3] To the extent Petitioner is attempting to raise a substantive claim challenging the state trial court's ruling granting the State's motion to admit similar fact evidence, Respondent correctly argues the claim is unexhausted and procedurally barred because Petitioner failed to raise this claim on direct appeal (Doc. 11 at 28). Petitioner shows neither cause and prejudice for the default nor a manifest injustice if the Court fails to review the claim.

12-1, Ex. 12 at 57-58). Petitioner filed a motion *in limine* to exclude this evidence (*Id*., Ex. 9 at 44-47). The trial court held a hearing at which the State presented the testimony of B.H. and her mother (Doc. 12-10, Ex. 76 at 97-164). The trial court granted the State's motion, allowing B.H.'s testimony (Doc. 12-1, Ex. 19 at 149-53). In doing so, the trial court considered the parties' motions and memorandums, B.H. and her mother's testimony at the hearing, and the lawyers' arguments (*Id*.).

The State also filed a motion *in limine*, moving the trial court to exclude any evidence that: 1) the State nolle prossed the 2009 case against Petitioner that was based on B.H. and V.H.'s accusations against him; 2) V.H. recanted her testimony against Petitioner; 3) the State filed no charges against Petitioner on B.H.'s accusations; and 4) Petitioner's daughter, T.R., disclosed no abuse by Petitioner, or denied abuse (Doc. 12-1, Ex. 17 at 144). The trial court held a hearing at which it heard argument from both parties (Doc. 12-10, Ex. 77 at 166-82). Defense counsel essentially conceded that the defense would not mention these matters, subject to change depending on the testimony elicited at trial (*Id*., Ex. 77 at 174-76). The trial court granted the State's motion *in limine* (Doc. 12-1, Ex. 21 at 166-67).

Petitioner raised this claim in Issue #3 of his petition alleging ineffective assistance of appellate counsel (Doc. 12-8, Ex. 57 at 18-23). He alleged that appellate counsel should have argued that the state trial court abused its discretion in allowing B.H. to testify about similar fact evidence under Fla. Stat., 90.404(12)(b), while excluding evidence that V.H. recanted the allegations she made against Petitioner, and that in 2009, the State nolle

prossed the charges brought against Petitioner based on B.H. and V.H.'s allegations (*Id.*). The state appellate court denied the petition without elaboration (Doc. 12-9, Ex. 60).

Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285–86. "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments . . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016) (citations and internal quotation marks omitted).

While Petitioner's ineffective assistance of appellate counsel claim is of federal constitutional dimension, the underlying basis for his ineffective assistance of counsel claim, at least concerning the state court's decision to allow B.H.'s similar fact testimony, is the admissibility and relevance of a collateral crimes witness's testimony under state law and state evidentiary rules. In his state petition, Petitioner argued that the state court abused its discretion in allowing similar fact evidence because the evidence presented in support of the motion failed to meet Florida's "clear and convincing standard." (Doc. 12-8, Ex. 57 at 20-21). The state appellate court, in rejecting this claim of ineffective assistance of appellate counsel in Petitioner's state habeas petition, has answered the question of what would have happened if appellate counsel had raised this state law claim

on direct appeal—the claim would have been rejected. *See Herring*, 397 F.3d at 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [the petitioner's counsel] done what [the petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan* 119 F.3d at 1549); *Callahan*, 427 F.3d at 932 ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]—the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection."). Thus, Petitioner cannot show that appellate counsel was ineffective in failing to challenge the trial court's order allowing B.H.'s similar facts testimony.

Petitioner's claim that appellate counsel was ineffective in failing to argue that excluding reference to V.H.'s recantation of her accusation against Petitioner, and the State's dismissal of the charges against Petitioner that were based on B.H. and V.H.'s accusations, violated Petitioner's right to confront B.H. (Doc. 12-8, Ex. 57 at 22) raised a federal question. *See Pointer v. Texas*, 380 U.S. 400, 404-05 (1965) (the Sixth Amendment confrontation clause guarantees to a criminal defendant the right to cross-examine a witness against him). But appellate counsel was not deficient in failing to assert this claim because it was not preserved for appeal, since trial counsel never objected at trial that exclusion of the information violated Petitioner's confrontation rights (*See* Docs. 12-1 through 12-11). *See Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005)

("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Bertolotti v. Dugger*, 514 So.2d 1095, 1096 (Fla.1987) ("[T]o preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court.").

Petitioner shows neither deficient performance nor resulting prejudice from appellate counsel's decision not to raise these claims on appeal. Thus, this claim warrants no relief because the elements of *Strickland* remain unsatisfied, and Petitioner fails to meet his burden of proving that the state appellate court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim of ineffective assistance of appellate counsel. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Ground Two warrants no relief.

**Ground Three: Failure to raise RICHARDSON HEARING.**

The Court construes Ground Three as alleging that Petitioner's appellate counsel was ineffective in failing to raise on direct appeal the argument that the trial court erred in failing to hold a *Richardson* hearing.[4] He alleges that after the "Child Protection Team" (CPT) interviewed victims El.K., Em.K., and T.R., the prosecutor announced at the April 8, 2013, pretrial hearing that the CPT would interview T.R. again because she started disclosing abuse (Doc. 1 at 10). On April 15, 2013, one week before trial, the State

[4] "A *Richardson* hearing is held to determine whether the State committed a discovery violation in contravention of the Florida Rules of Criminal Procedure and, if so, whether the non-compliance resulted in prejudice to the defendant's ability to prepare for trial." *Cisneros v. McNeil*, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008).

amended the Information to add charges for abuse of T.R. and H.K. and filed a supplemental discovery exhibit containing the second CPT interview of T.R. and recorded interviews of her mother and grandmother (*Id*.). Neither T.R.'s interviews nor the interviews of her mother and grandmother were transcribed or provided to Petitioner (*Id*.). Defense counsel moved for a discovery violation (*Richardson*) hearing, but a hearing was never held (*Id*.).

Petitioner raised this claim in Issue #1 of his petition alleging ineffective assistance of appellate counsel (Doc. 12-8, Ex. 57 at 8-12). The state appellate court denied the petition without elaboration (Doc. 12-9, Ex. 60).

This claim fails for multiple reasons. First, "[w]here a defendant fails to timely object to a discovery violation or to request a *Richardson* hearing, the defendant does not preserve the point for appellate review." *Major v. State*, 979 So. 2d 243, 244 (Fla. 3d DCA 2007). In his Rule 3.850 motion, Petitioner conceded that his trial counsel failed to preserve the *Richardson* issue for appellate review by failing to "properly" move for a hearing and object when the trial court failed to have a hearing (Doc. 12-3, Ex. 40 at 25, 29-31). Thus, appellate counsel was not deficient in failing to raise a claim that was not preserved for appeal. *See Diaz*, 402 F.3d at 1142.

Second, even if the issue was preserved for appeal, it lacked merit. Initially, Petitioner has failed to show that there was actually a discovery violation. The record shows that the prosecutor promptly disclosed T.R.'s second interview and the interviews of T.R.'s mother and grandmother, defense counsel admitted having promptly received the discovery, and the trial court at least implicitly found that there was no discovery

violation (Doc. 12-10, Ex. 76 at 106-08). Because the trial court never found a discovery violation, no *Richardson* hearing was required. *See Smith v. State*, 283 So. 3d 817, 820–21 (Fla. 4th DCA 2019) ("[A] trial court is not required to conduct a *Richardson* hearing where it has not first determined that a discovery violation has occurred."); *Armstrong v. Sec'y, Dep't of Corr.*, 847 F. App'x 680, 685 (11th Cir. 2021) ("In the absence of a discovery violation, a Richardson hearing is not required." (citing *Jones v. State*, 32 So. 3d 706, 710–11 (Fla. 4th DCA 2010))).

Moreover, "'the failure to conduct a Richardson hearing is not per se reversible error, but rather is subject to a harmless error analysis." *Hedvall v. State,* 283 So. 3d 901, 910 (Fla. 3d DCA 2019) (quoting *Durrance v. State*, 44 So. 3d 217, 221 (Fla. 4th DCA 2010)). "A discovery violation may be considered harmless if an appellate court can determine, beyond a reasonable doubt, that the defense was not procedurally prejudiced by the violation." *Id*. (citing *Casica v. State*, 24 So. 3d 1236, 1240 (Fla. 4th DCA 2009)). The supplemental discovery did not prejudice Petitioner because the interviews were not admitted at trial, and T.R. and her grandmother were not called as witnesses (*See* Doc. 12-10, Ex. 76 at 108).[5]

Petitioner shows neither deficient performance nor resulting prejudice from appellate counsel's decision not to raise this claim on appeal. Thus, this claim warrants no relief because the elements of *Strickland* remain unsatisfied, and Petitioner fails to meet

[5] Although T.R.'s mother, Tricia Cocuzza, briefly testified at trial, her testimony concerned only her relationship with Petitioner and the custodial and care arrangements she had with him and T.R.'s grandmother. The defense did not even cross-examine her (Doc. 12-11, Ex. 83 at 435-38).

his burden of proving that the state appellate court either unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in rejecting this claim of ineffective assistance of appellate counsel. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Ground Three warrants no relief.

**Ground Four: Failure to raise RICHARDSON HEARING Defense Counsel withheld exculpatory evidence by failing to present her client with knowledge of T.R. (Bella)'s CPT Interview.**

Petitioner contends that trial counsel was ineffective in failing to inform him about T.R.'s interviews with the CPT. Petitioner asserts that during the interviews, T.R. disclosed no inappropriate behavior by Petitioner. Petitioner contends that had he known about T.R.'s interviews, he would have taken the stand and used T.R.'s statements as a defense.

In state court, a similar claim was raised in Issue #2, "Specific Act (D)" of Petitioner's amended Rule 3.850 motion (Doc. 12-3, Ex. 40 at 25, 31-32). There, Petitioner asserted trial counsel was ineffective in failing to notify him about T.R.'s statements during the CPT examination. Had he known about T.R.'s statements, "he would have demanded [they] be brought as evidence." (*Id.*, Ex. 40 at 31). In denying the claim, the state post-conviction court stated:

> The Court concludes from the evidence presented at the hearing that Counsel's failure to seek to admit T.R.'s CPR interviews or to call T.R. as a witness at trial was the result of trial strategy. Counsel testified that she reviewed T.R.'s prior CPT statements and made the decision not to call T.R. with the knowledge that Defendant wanted T.R. to testify. She said she was concerned that any exculpatory testimony T.R. might have given would be impeachable, given her CPT admissions that she had been sleeping during the offenses, and that her father had told her what to say and not to say. T.R. would also be able to confirm that the other victims

were at Defendant's home for a sleepover and that Defendant was present on the night when the sexual abuse allegedly occurred. Counsel also worried that T.R. might disclose abuse for the first time if called to the stand, given her very young age and the fact that young children were suggestible; and it seemed to Counsel from T.R.'s second CPT interview that someone was giving T.R. details about the alleged abuse. Counsel did not seek to admit the CPT interviews because they did not contain allegations of sexual abuse, rendering them inadmissible.

Defendant has failed to demonstrate that no reasonable attorney would have made these same decisions. T.R. said during her first interview that she woke up sometime after Dawn Swanson left Defendant's home for the night, suggesting she may have slept through the entire incident. And contrary to Defendant's argument, several of T.R.'s answers in that interview could reasonably be construed as admissions that Defendant had told her not to disclose incriminating information.

When T.R. was asked if anyone told her to keep secrets about touches, T.R. said, "my daddy." When asked if anyone gave her a touch and told her to keep it a secret, T.R. again responded, "my daddy." T.R. was asked if anyone told her what *not* to say, and she replied, "yes," and that her daddy told her "not to talk to [the interviewer]." She gestured to the interviewer and to the physical diagrams when asked what she was told not to talk about and said "this." Whether T.R. actually meant to say that her father directed her not to disclose information, or whether T.R. was merely repeating her father's general admonitions against talking about sexual matters, need not be determined; rather, it is apparent that it *sounded* like T.R. was influenced by her father, and the State could have used these statements, as well as the statements that she had been sleeping, [FN] to impeach any trial testimony T.R. gave to the contrary, pursuant to the provisions in § 90.614, Fla. Stat. Moreover, T.R.'s statements during her second interview clearly demonstrated that her mother and perhaps others were giving her information about the charges against Defendant.

The Court further accredits Counsel's testimony that she discussed T.R.'s CPT interviews with Defendant. Counsel said it was her habit to review CPT interviews with a client in order to decide whether to call a witness, but because the State filed an amended information only 7 days before trial, and the defense did not want to waive speedy trial, she might have only been able to discuss the interviews with Defendant. Counsel conceded she could not recall if Defendant ultimately agreed with her decision not to call T.R. as a witness, but she believed that calling T.R. could have provided little benefit and caused significant detriments. *Cf. Puglisi v. State*, 112 So. 3d 1 196, 1208-09 (Fla. 2013) (Pariente, J. specially

> concurring) (concurring with majority's holding that trial counsel has ultimate decision-making authority as to whether to call witness, but that defendant must be consulted, and counsel's decision may be subject to postconviction claim under *Strickland*).
>
> For the forgoing (sic) reasons, this claim shall be denied.
>
> [FN] E.L.K. also testified at trial that T.R. was sleeping during the time when Defendant molested them. See Attachment 8.

(Doc. 12-7, Ex. 46 at 120). The appellate court affirmed without a written opinion (*Id*., Ex. 52).

Initially, to the extent that Petitioner and his counsel provided inconsistent testimony about whether counsel discussed with Petitioner T.R.'s testimony during the CPT interview (*see* Doc. 12-11, Ex. 86 at 635, 640), the state trial court made a credibility determination when it found that, consistent with counsel's testimony, "she discussed T.R.'s CPT interviews with Defendant." (Doc. 12-7, Ex. 46 at 125). This credibility determination must be afforded deference. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" that of the petitioner.); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are...entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."); *Williams v. Johnson*, 845 F.2d 906, 909 (11th Cir. 1988) ("Implicit findings regarding the credibility of witnesses are included among the findings that this Court must credit."). Petitioner does not point to any evidence aside from his own testimony, which the state court did not credit, that the state court's

conclusion was erroneous. Thus, this Court defers to the state court's credibility determination.

Having concluded that counsel reviewed the video of the interview and discussed the interview with Petitioner, the state court's rejection of this claim was reasonable. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see also Ball v. United States*, 271 F. App'x 880, 884 (11th Cir. 2008) ("Trial counsel's decisions with regard to [defendant's] alibi witnesses were quintessential trial strategy."). "[T]o show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers*, 13 F.3d at 386.

The state court reasonably concluded that counsel was not deficient for declining to call T.R. as a witness. Several reasonable strategic considerations supported that decision. First, counsel was concerned because T.R. was very young—under five years old—and unpredictable (Doc. 12-11, Ex. 86 at 603, 605-06). *See, e.g., Robbins v. Hepp*, 2022 WL 541560, at *9 (E.D. Wis. Feb. 23, 2022) ("Child witnesses are extremely unpredictable and there would be little assurance that his trial testimony would be consistent with his forensic interview."). Second, during the first interview, T.R. made statements indicating or implying that Petitioner had told her what to say or not to say

(*Id.*, Ex. 86 at 603-04). *See United States v. Arias-Santos*, 39 F.3d 1070, 1074 (10th Cir. 1994) ("Questions directed at revealing that the testimony of a witness was coached are clearly relevant to a jury's assessment of the reliability of that witness." (citing G*eders v. United States*, 425 U.S. 80, 89–90 (1976))). Third, although during the first interview, T.R. denied seeing Petitioner abuse the other two victims, T.R. began saying that she saw abuse, which was the reason for the second interview. (*Id.*, Ex. 86 at 604). Given these strategic considerations, the Court cannot say that it was "patently unreasonable" for counsel to refrain from calling T.R. as a witness. *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987).

To the extent Petitioner contends counsel should have introduced T.R.'s statements at trial or called Petitioner to testify about T.R.'s statements, both counsel and the state court recognized during the Rule 3.850 evidentiary hearing that T.R.'s statements were not admissible as child hearsay because there was no statement of child abuse during either interview. (Doc. 12-11, Ex. 86 at 607-08, 636). *See* Fla. Stat. § 90.803(23); *Bryant v. State*, 586 So. 2d 1269, 1270 (Fla. 1st DCA 1991) ("[T]he hearsay exception [under section 90.803(23),] applies only to statements of the victim describing the act of child abuse . . . ."). Thus, the state court reasonably rejected this ineffective-assistance claim. Ground Four is denied.

**Ground Five: Granting of State's 1st Motion in Limine 4-1-2013 Exclusion of Prior Sexual Acts**

Although Ground Five is very confusing, the Court construes it as alleging that Petitioner's appellate counsel was ineffective in failing to challenge the trial court's

granting of the State's first motion in limine filed on April 1, 2013 (Doc. 1 at 14-15). In his supplemental reply, Petitioner contends that appellate counsel should have challenged the trial court's exclusion of El.K.'s accusations of sexual abuse against Jonathan, a former friend of El.K.'s mother (Doc. 27 at 4-6). He argues that the accusations should not have been excluded because El.K. claimed Jonathan touched her vagina, which is the same allegation in Count Two of the Information against Petitioner (*Id*. at 4-5).

Petitioner raised a similar claim in Issue #2 of his petition alleging ineffective assistance of appellate counsel (Doc. 12-8, Ex. 57 at 12-17). There, Petitioner alleged that on direct appeal, appellate counsel should have argued that the trial court erred in prohibiting the defense from cross-examining El.K. with evidence that a few years before she accused Petitioner of sexual abuse, she accused both Jonathan and her former step-father, Donald Walden, of sexual abuse (*Id*.). Petitioner argued that those accusations would have supported his defense that El.K. fabricated her accusations against him because they would have shown how: 1) at only seven years old, El.K. knew about the type of sexual acts she accused Petitioner of committing on her; and 2) El.K. had a history of accusing men who had a relationship with her mother of committing sexual abuse against El.K. (*Id*.). The state appellate court denied the petition without elaboration (Doc. 12-9, Ex. 60).

Initially, in his supplemental reply, Petitioner states that he "agrees accusations against Donald Walden were different . . . ." (Doc. 27 at 4). The Court construes this statement as Petitioner's concession that his claim that appellate counsel was ineffective

in failing to assert that the trial court erred in excluding evidence of El.K.'s accusations against Walden warrants no relief. Remaining, therefore, is Petitioner's claim that appellate counsel was ineffective in failing to argue that the trial court erred in excluding evidence of El.K.'s accusations of sexual abuse against Jonathan.

There are multiple reasons to deny relief on this claim. First, it is unclear from the record whether there actually was a person named Jonathan who abused El.K. When asked during her first interview whether anyone else had ever touched her "JJ" (vagina), El.K. stated that her mother's friend "Jonathan" touched it (Doc. 12-1, Ex. 14 at 91-92). El.K. never mentioned Walden during the interview (*Id.*, Ex. 14 at 91-101). The report of the November 6, 2012 CPT Interview with Dawn Swanson, El.K.'s mother, reveals that although El.K. claimed in her interview that a person named Jonathan had touched her, Swanson said that "she does not ever know a person by this name." (Doc. 12-2, Ex. 38 at 313). When Swanson testified during the April 8, 2012 child hearsay hearing and was asked if the girls had ever been sexually abused before, she only testified about her girls accusing their stepfather (Walden) of sexual abuse; there was no mention of "Jonathan" (Doc. 12-10 at 60-65). And during a discussion on the State's motion in limine, defense counsel appears to say that Jonathan was actually Walden (Doc. 12-4 at 199-200). It would be extraordinary to conclude that appellate counsel was deficient for failing to raise a claim challenging the exclusion of claims of sexual abuse against an individual who did not exist.

Second, the state appellate court denied this claim of ineffective assistance of appellate counsel. Thus, in rejecting this claim, the state appellate court necessarily

determined that the trial court's exclusion of El.K.'s prior accusations of sexual abuse was not reversible error under Florida law. This Court must defer to the state court's interpretation of its own law: "a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. *See also Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done .... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan*, 119 F.3d at 1549). Appellate counsel is not deficient in failing to pursue a meritless claim.

Third and finally, Petitioner fails to show that no reasonable appellate attorney would have chosen not to raise this claim on appeal. Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). In this situation, "a habeas court must determine what arguments or theories . . . could have supported[ ] the state court's decision." *Id*. at 102. Petitioner cannot prevail unless the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. Thus, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011).

Petitioner cannot meet his burden. A fairminded jurist could conclude that the "omitted claim" had no "reasonable probability of success on appeal" because the exclusion of any evidence of El.K.'s prior allegations of sexual abuse was harmless. *Joiner v. United States*, 103 F.3d 961, 963 (11th Cir. 1997); *see also Boland v. Sec'y, Dep't of Corr.*, 278 F. App'x 876, 879 (11th Cir. 2008) (prejudice inquiry "requires that we determine whether the state court would have applied harmless error review"). With no reasonable probability of success on appeal, Petitioner cannot show prejudice from the omission of this claim.

A Florida appellate court "will not reverse where an error is harmless." *Peret v. State*, 301 So. 3d 437, 439 (Fla. 2d DCA 2020). The test for harmlessness is "whether there is a reasonable possibility that the error affected the verdict." *Butler v. State*, 493 So. 2d 451, 453 (Fla. 1986). Applying this rule, Florida courts have held that errors can be harmless "where the defendant's guilt was established by evidence unrelated to the error . . . ." *Thorne v. State*, 271 So. 3d 177, 185 (Fla. 1st DCA 2019).

Under the facts of Petitioner's case, a fairminded jurist could conclude that the evidence of El.K.'s accusation of prior sexual abuse would not have aided the defense. There was little to no evidence showing that El.K.'s allegations of sexual abuse were fabricated. Had El.K.'s taped interview not been redacted to omit her statements of past sexual abuse or had defense counsel cross-examined El.K. about that abuse, there is a reasonable possibility her testimony could have engendered empathy from the jury, thereby increasing her credibility. And there was little, if any, evidence that El.K. or her mother had any motive to fabricate the charges against Petitioner. Moreover, even if

El.K.'s statements that she was the victim of prior sexual abuse were relevant and should have been admitted, her testimony was not the only evidence supporting the convictions. Brianna Hall (B.H.), who had no connection to El.K. or her family, testified about how Petitioner sexually abused her when she was a young girl (Doc. 12-11, Ex. 83 at 442-57). Thus, there is no "reasonable possibility" that the outcome would have been different had the trial court allowed the jury to hear evidence of El.K.'s accusations of past sexual abuse.

The state appellate court could have concluded that appellate counsel was "not ineffective" for declining to raise an alleged "error [that] was harmless." *Boland*, 278 F. App'x at 880. Because "some fairminded jurists could agree with [that] decision," "federal habeas relief must be denied." *Hill*, 662 F.3d at 1346. Accordingly, Ground Five warrants no relief.

**Ground Six: Failure to raise fundamental error of Court not ordering "Manifest Necessity" mistrial.**

The Court construes Ground Six as alleging that Petitioner's appellate counsel was ineffective in failing to argue on direct appeal that fundamental error occurred when the trial court failed to grant a mistrial. Petitioner argues that a mistrial should have been declared after victim Em.K. refused to enter the courtroom, causing a commotion that the jury may have heard. He also argues that the court should have asked the jurors "what, if anything, they heard, and what they thought about it." (Doc. 1 at 17).[6]

[6] Petitioner also states that the prosecutor attempted to "goad [him] into requesting a mistrial" by informing the jury that Petitioner was "currently incarcerated." (Doc. 1 at 17). It is unclear whether this is merely a collateral comment by Petitioner, a separate claim, or another reason why Petitioner believes the state trial court should have declared a mistrial. Thus, the

Petitioner raised a similar claim in Issue #5 of his petition alleging ineffective assistance of appellate counsel (Doc. 12-8, Ex. 57 at 27-29). There, Petitioner alleged that appellate counsel should have argued that after Em.K. refused to testify and caused a commotion outside the courtroom, the state trial court erred in failing to poll the jurors about what they heard and how it affected them, then analyze whether a mistrial or other relief, such as a continuance, was warranted (*Id.*). Petitioner also mentioned that he was denied his right to confrontation when Em.K. refused to testify, considering "[t]he inescapable reference to every motion filed by the State and witnesses already testified refers to this charge victim who refused to testify." (*Id.*, Ex. 57 at 28). The state appellate court denied the petition without elaboration (Doc. 12-9, Ex. 60).

After the incident with Em.K., the state trial court discussed with the parties the available options, including the possibility of having Em.K. testify via video conference, a curative instruction, or a mistrial (Doc. 12-11, Ex. 83 at 335-53). The state trial court then conducted a colloquy with Petitioner, advised him of the ramifications of both requesting and not requesting a mistrial, and allowed him to consult with counsel regarding a mistrial (*Id.*, Ex. 83 at 353-61).

---

Court will not address this issue. *See, e.g., Nail v. Slayton*, 353 F. Supp. 1013, 1019 (W.D. Va. 1972) ("It is not the duty of federal courts to try to second guess the meanings of statements and intentions of petitioners. Rather the duty is upon the individual who asserts a denial of his constitutional rights to come forth with a statement of sufficient clarity and sufficient supporting facts to enable a court to understand his argument and to render a decision on the matter."). Moreover, this part of the claim is unexhausted and procedurally barred because Petitioner failed to assert the issue in his state petition alleging ineffective assistance of appellate counsel (*See* Doc. 12-8 at 27-29).

After consulting with Petitioner, defense counsel informed the trial court that although she believed there were grounds for a mistrial and wished to preserve the issue for appeal, Petitioner wanted to proceed with the trial (*Id.*, Ex. 83 at 358). The trial court then informed Petitioner that counsel needed to move for a mistrial to preserve the issue for appeal, and that he could not later complain that a mistrial should have been granted if the defense failed to move for a mistrial (*Id.*). Petitioner assured the trial court that he understood the "ramifications" of not moving for a mistrial, that he had enough time to discuss the matter with counsel, and that counsel did not pressure him to reject moving for a mistrial (*Id.*, Ex. 83 at 358-59). In fact, Petitioner informed the court that counsel wanted to move for a mistrial, but Petitioner instructed her not to (*Id.*, Ex. 83 at 359).

Had appellate counsel raised this issue, it would have likely failed on appeal. First, because Petitioner refused to allow counsel to move for a mistrial, Petitioner's appellate counsel could not challenge any trial court error in failing to grant a mistrial under Florida's "invited-error" doctrine. *See Gonzalez v. State*, 136 So. 3d 1125, 1147 (Fla. 2014) ("Under the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal.").[7] Second, even if Petitioner had not invited any error, under Florida law, "[e]rrors that have not been preserved by contemporaneous

[7] Petitioner asserts that "his insistence to continue" was "not to continue with trial" but rather "to continue with the polling of the jury to query jurors as to" what they heard when Em.K refused to enter the courtroom and made a "commotion." (Doc. 27 at 8). The assertion is belied by the record. During the trial court's colloquy with Petitioner, and in his state petition alleging ineffective assistance of appellate counsel, Petitioner indicated he wanted to continue and not move for a mistrial because he did not want to waive his right to a speedy trial. (Doc. 12-5 at 354-61; Doc. 12-8 at 27). Nothing in the record suggests that Petitioner was confused on the issue and believed they were discussing only the issue of questioning the jury about the incident with Em.K. rather than proceeding with the trial.

objection can be considered on direct appeal only if the error is fundamental." *Jackson v. State*, 983 So. 2d 562, 568 (Fla. 2008). As Petitioner's trial counsel did not preserve this issue by moving for a mistrial, the appellate court could review the issue only if it constituted fundamental error.

The state appellate court denied this claim of ineffective assistance of appellate counsel. Thus, in rejecting this claim, the state appellate court necessarily determined that the trial court's failure to enter a mistrial was not reversible fundamental error. This Court must defer to the state court's interpretation of its own law: "a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76. *See also Herring*, 397 F.3d at 354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done .... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan*, 119 F.3d at 1549). Ground Six warrants no relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment against Petitioner, terminate any pending motions as moot, and close this case.

3. The Court should grant an application for a Certificate of Appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a Certificate of Appealability is **DENIED**. And because Petitioner is not entitled to a Certificate of Appealability, he may not proceed on appeal *in forma pauperis*.

ORDERED in Tampa, Florida on September 21, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*
Counsel of Record